IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| KIMBERLY KAY,<br><br>*Plaintiff*,<br><br>v.<br><br>BMF IV IL FOX VALLEY VILLAGES LLC, BRIDGE PROPERTY MANAGEMENT L.L.C.,<br><br>*Defendants*. | Case No: 23-cv-6049 |

## COMPLAINT

NOW COMES Plaintiff, Kimberly Kay, by and through her attorneys, Aaron Hanford and Prairie State Legal Services, and pursuant to the the Fair Housing Amendments Act, 42 U.S.C. §3601 *et seq.*, the Illinois Human Rights Act, 775 ILCS §5/3-101 *et seq.*, the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* and the Illinois Consumer Fraud and Deceptive Business Practices Act, , 815 ILCS §505/1 *et seq.*, complains as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §1331 (federal question jurisdiction) and §1343 (civil rights). The Court has supplemental jurisdiction of Plaintiff's state claims under 28 U.S.C. §1367.

2. Venue in this District is proper under 28 U.S.C. §1391 because the events complained of occurred in this District, in DuPage County.

## PARTIES

3. Plaintiff Kimberly Kay has at all relevant times resided at 2668 Village Green Dr. Apt. A2, Aurora, IL 60504, a property in DuPage County which she leases from Defendant BMF IV IL FOX VALLEY VILLAGES, LLC ("BMF IV").

4. Ms. Kay is a person with multiple disabilities, including diagnosed anxiety, post-traumatic stress disorder, depression, and a seizure disorder which can cause her to lose consciousness with very little warning. She takes medication to control her seizures and has an emotional support animal ("ESA"), a 16-pound Chihuahua mix dog named Sabrina, to assist with her anxiety and depression.

5. Defendant BMF IV is a limited liability corporation registered in Delaware and whose principal place of business is in Utah. It does business in DuPage County, Illinois as "Fox Valley Villages," ("FVV") the property with that name which includes Ms. Kay's residence.

6. Defendant Bridge Property Management L.L.C. (hereinafter, "BPM") is a limited liability corporation registered in Utah and whose principal place of business is Utah.

7. Upon information and belief, BPM is engaged by BMF IV as a property management company to manage FVV, located in DuPage County.

## FACTS – FAIR HOUSING AND HUMAN RIGHTS ACTS

8. Ms. Kay has resided at FVV in Aurora, Illinois, for more than six years. She has owned her ESA Sabrina during this entire period, and registered Sabrina with BPM and prior managers as required under the lease.

9. Ms. Kay does not leave her apartment without her ESA, which she keeps on a leash while in common areas of the property.

10. Ms. Kay's current lease runs from September 1, 2022 through September 30, 2023. She is a tenant in good standing. Prior to the events detailed below, FVV had not issued any lease violations to her during the entire period of her tenancy there.

11. FVV is an apartment complex with more than 400 units, located in Aurora, Illinois and in DuPage County.

12. Ms. Kay's lease agreement includes access to several communal amenities, including a fitness center.

13. Prior to the events detailed herein. Ms. Kay had been using the fitness center approximately every other day for therapeutic exercises according to her doctors' instructions.

14. Ms. Kay's lease includes a detailed "Reasonable Modifications and Accommodations Policy" which acknowledges Defendants' duties under fair housing laws and notifies tenants of their right to request a reasonable accommodation "to have an equal opportunity to use and enjoy an apartment, including public and common areas." It also commits Defendants to "an interactive dialogue … in relation to any request" and directs lessees to Raquel Gaspar, who is employed as a community manager by BPM, with any questions. *See Plaintiff's Lease, pp. 40-41, attached as Ex. A.*

15. Ms. Kay's lease also includes a Support or Service Animal Amendment, acknowledging Ms. Kay's ESA. Ms. Gaspar signed the Service Animal Amendment. *See Ex. A, p 17.*

16. The Support or Service Animal Amendment acknowledges Ms. Kay's right to bring her ESA into common areas of the apartment complex. *See Ex. A, p. 17.*

17. Sometime during late October 2022, Ms. Kay was at the FVV fitness center, with her ESA leashed to one machine while safely using another, when Kathleen Filipovic, BPM's leasing agent, came through the fitness center with prospective tenants. Ms. Filipovic told Ms. Kay that her ESA was not allowed in the center, even secured as it was. When

Ms. Kay protested that service animals are allowed in common areas, Ms. Filipovic responded that it could not be there due to "germs and safety."

18. Ms. Kay contacted Ms. Gaspar as instructed by her lease's Reasonable Accommodations addendum. Ms. Gaspar said only that the ESA was not allowed in common areas because the prospective tenants were afraid of it.

19. Ms. Kay contacted Ashley Victory, the BPM regional manager, who repeated that her ESA was not allowed in the fitness center.

20. Still in October, 2022, Ms. Kay contacted the Illinois Attorney General's office for assistance, explaining that Defendants were excluding her ESA from common areas.

21. Also in October, despite the Support Animal Amendment in Ms. Kay's lease and her prior registration of Sabrina as an ESA, Ms. Victory and Ms. Gaspar informed Ms. Kay that they had no records of Sabrina's registration. They required her to provide additional documentation from her medical providers.

22. In early November, Ms. Kay provided two detailed letters from healthcare providers which explained her need for an ESA and the medical benefits it provides for her.

23. Around December, 2022 the effectiveness of Ms. Kay's seizure medication began to wane, causing seizures and loss of consciousness. When these seizures occur, Ms. Kay has just a few seconds before she loses consciousness.

24. During those seconds, Ms. Kay would release the ESA's leash out of fear that she might collapse on top of it, a small, 16-pound dog.

25. Between December, 2022 and March, 2023, this happened three times while in communal areas in and around FVV.

26. On January 16, 2023, Ms. Kay took Sabrina outside in response to the call of nature. Ms. Kay slipped on stepping stones, causing her to release Sabrina's leash.

27. On February 1, 2023, the Illinois Attorney General responded to Ms. Kay's complaint by sending Ms. Filipovic and BPM a letter providing information regarding published HUD guidance on responding to reasonable accommodations for persons with disabilities and support animals. *See Ex. B, Letter from the Illinois Attorney General, February 1, 2023.*

28. The letter included Notice 2020-01 from the HUD Office of Fair Housing and Equal Opportunity, entitled "Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act," as well as the May 17, 2004 Joint Statement of the Department of Housing and Urban Development and the Department of Justice, "Reasonable Accommodations under the Fair Housing Act," *available at https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf*

29. Later in February, community manager Ms. Gaspar told Ms. Kay that she does not believe that Ms. Kay has a seizure disorder.

30. During that encounter and on other occasions, Ms. Gaspar informed Ms. Kay that these leash release events qualify as "disturbing the peace." She accused Ms. Kay of preventing other residents from peacefully enjoying their homes, and asserted that Ms. Kay does not believe the rules apply to her.

31. On March 6, 2023, Defendants issued Ms. Kay a 10-day Notice of Termination of Tenancy, alleging that she had violated her lease by allowing her ESA to be off leash in the common areas of the property four times between November, 2022 and March, 2023.

32. Also on March 6, Ms. Gaspar called Ms. Kay and told her that she could not use the amenities provided under the lease, because BPM had terminated her lease.

33. Ms. Kay has not used the fitness center since that date.

34. After receiving the Termination of Tenancy, Ms. Kay contacted HOPE Fair Housing Center ("HOPE") for assistance. HOPE is an Illinois nonprofit which describes itself on its website as "a nonprofit organization dedicated to eliminating housing discrimination."

35. On March 16, 2023, HOPE sent a letter to Defendants on Ms. Kay's behalf, by regular mail and by email to Ms. Gaspar. *See Ex. C, Letter from HOPE Fair Housing, March 16, 2023.*

36. The letter explained Ms. Kay's seizure disorder and her need for her ESA, and formally requesting a reasonable accommodation.

37. In spite of the letter from HOPE, Defendants persisted in their efforts to evict Ms. Kay.

38. As part of its efforts to evict Ms. Kay, Defendants have stopped providing her with general notices which they have sent to other tenants, including the following:

    a) On or about June 2, 2023, BPM notified tenants that several cars had been burglarized in the parking lot. Ms. Kay did not receive this notice from Defendants, and only learned of it later through a neighbor.

    b) On or about June 21, 2023, BPM notified tenants that it would be performing annual inspections of the apartments on June 22. Again, Defendant did not notify Ms. Kay. Nonetheless, on June 22, maintenance came into Ms. Kay's home for the inspection, despite having never sent notice to her.

39. These failures have posed a significant hardship to Ms. Kay, inhibiting her ability to use and enjoy her dwelling. Not being notified of potential threats to resident safety has caused substantial anxiety, and the lack of notice of planned routine maintenance has

caused undue stress and required Ms. Kay to rearrange her life in ways which other tenants were not subject to.

40. Ms. Gaspar asked maintenance workers and other residents to take pictures and video of Ms. Kay whenever she is in communal areas. This has happened frequently, leading Ms. Kay to experience a constant feeling of harassment and stalking whenever she leaves her apartment. As a consequence, she has endured humiliation, embarrassment and mental anguish.

41. The ongoing discrimination, intimidation and retaliation described herein have significantly exacerbated Ms. Kay's symptoms of stress and anxiety, conditions for which Defendants had prior notice due to ESA documentation repeatedly provided by Ms. Kay.

42. Due to Defendants' actions, Ms. Kay has had multiple unplanned visits to medical providers, including mental health professionals. Her providers have had to increase the dosage of her mental health medications.

43. Ms. Kay's health has deteriorated as she is unable to use the fitness center to perform her doctor-recommended therapeutic exercises.

44. Consequently, Defendants' actions have caused actual damages, extreme mental anguish and a violation of her civil rights.

**FACTS – ELECTRONIC FUNDS TRANSFER AND DECEPTIVE BUSINESS PRACTICES**

45. The rent due under Ms. Kay's lease is $1,235 per month, which the lease requires to be debited directly from Ms. Kay's bank account through www.Domuso.com. Prior to March, 2023, Defendants had deducted that amount each month.

46. Defendants last debited a regular monthly rent payment from Ms. Kay's account on or about February 1, 2023. After serving Ms. Kay with a 10-day notice of termination of

tenancy, Defendants stopped debiting regular rent payments from Ms. Kay's bank account.

47. On June 2, 2023, Ms. Kay received an email from Domuso.com, notifying her that a rent payment of $5,273.85 had been made from her bank account and accepted by Defendants.

48. Ms. Kay did not authorize the June 2023 debit of $5,273.85.

49. Ms. Kay had not received any advance notice of this debit.

50. Ms. Kay has never authorized a debit of any amount other than her monthly rent payment, currently $1,235.

51. Ms. Kay does not maintain a balance of more than $5,000 in this account, and so a completed debit attempt would have resulted in an overdraft.

52. Ms. Kay was able to contact Chase Bank and place a stop-payment before the debit was finalized. Ms. Kay paid $30 to Chase Bank for this stop-payment.

53. On June 8, 2023, assistant manager Ray contacted Ms. Kay to ask why the payment had not gone through. Ray informed Ms. Kay that he had been told by BMP to proceed with rent withdrawals for March through June because the dispute had been settled.

**COUNT I – Violation of the Fair Housing Amendments Act, Reasonable Accommodation – 42 U.S.C. §3604(f)(3)(B)**

54. Ms. Kay re-alleges paragraphs 1-53 of this Complaint and incorporates them herein.

55. Under the FHAA, illegal discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §3604(f)(3)(B).

56. Ms. Kay is an "aggrieved party" and a "person" within the meaning of §§3602(i) and (d) of the FHA. She has a "handicap" within the meaning of Section 3602(h) of the FHA as she has physical and mental impairments which substantially limit one or more her major life activities.

57. Defendants violated 42 U.S.C. §3604(f)(3)(B) by denying Ms. Kay's reasonable accommodation requests and instead persisting in their threats of eviction.

58. Defendants' actions have prevented Ms. Kay from using and enjoying her home like other tenants.

59. Defendants' actions have caused actual damages and extreme mental anguish, as well as violating of her civil rights.

**COUNT II – Violation of the Fair Housing Amendments Act, Privileges of Rental 42 U.S.C. §3604(b) –**

60. Ms. Kay re-alleges paragraphs 1-53 of this Complaint and incorporates them herein.

61. Under the FHAA, it is unlawful to discriminate against any person in the privileges of rental of a dwelling on the basis of disability. 42 U.S.C. §3604(b).

62. Ms. Kay is an "aggrieved party" and a "person" within the meaning of §§3602(i) and (d) of the FHA.

63. She has a "handicap" within the meaning of Section 3602(h) of the FHA as she has physical and mental impairments which substantially limit one or more her major life activities.

64. Defendants violated 42 U.S.C. §3604(b) by failing to provide Ms. Kay with routine notices which they sent to other non-disabled tenants, and by cutting off her access to community amenities. These actions denied her the privileges of rental enjoyed by other tenants.

65. Defendants' actions have caused actual damages and extreme mental anguish, as well as violating of her civil rights.

**COUNT III – Fair Housing Amendments Act, Retaliation and Intimidation – 42 U.S.C. §3617 and 24 C.F.R. §100.400(c)(6)**

66. Ms. Kay re-alleges paragraphs 1-53 of this Complaint and incorporates them herein.

67. Under 42 U.S.C. §3617, it is unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed … any right granted or protected by… …42 U.S.C. 3604."

68. Under 24 CFR §100.400(c)(6), a regulation promulgated to enforce §3617, it is unlawful to retaliate "against any person because that person reported a discriminatory housing practice to a housing provider or other authority."

69. Ms. Kay is an "aggrieved party" and a "person" within the meaning of §§3602(i) and (d) of the FHA.

70. Defendants' encouragement of residents and maintenance workers to take photos and videos of Ms. Kay whenever she is in communal areas constitutes intimidating and threatening conduct that is unlawful under §3617.

71. Ms. Kay's complaint to the Illinois Attorney General constitutes the report of a discriminatory housing practice to an authority under §100.400.

72. Defendants retaliated against Ms. Kay when they issued her the 10-day notice after learning that she had complained to the Illinois Attorney General.

73. Defendants violated 42 U.S.C. §3617 by way of violating 24 CFR §100.400(c) when they retaliated against Ms. Kay and intimidated her in this way.

74. Defendants' actions have violated Ms. Kay's civil rights and caused actual damages and extreme mental anguish.

**COUNT IV – Violation of the Illinois Human Rights Act, Reasonable Accommodation - 775 ILCS §5/3-102.1(C)(2)**

1. Ms. Kay re-alleges paragraphs 1-53 of this Complaint and incorporates them herein.

2. Under the Illinois Human Rights Act ("IHRA"), 775 ILCS §5/1-101 *et seq.*, it is a civil rights violation "to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person [with a disability] equal opportunity to use and enjoy a dwelling." 775 ILCS § 5/3-102.1(C)(2).

3. Ms. Kay is an "aggrieved party" and a "person" within the meaning of Sections 1-103(B) and (L) of the IHRA. She has physical and mental disabilities within the meaning of Section 1-103(I) of IHRA.

4. All Defendants are subject to IHRA and are "persons" within the meaning of Section 1-103(L).

5. At all times pertinent to this Complaint, Defendants knew that Ms. Kay has a mental disability and uses an ESA to relieve the symptoms of her disability.

6. Ms. Kay's reasonable accommodation request, seeking an exception to Defendants' policies, was necessary to provide her with an equal opportunity to use and enjoy her dwelling.

7. Defendants violated §3-102.1 of the IHRA when they denied Ms. Kay an equal opportunity to use and enjoy her home and Fox Valley Villages by continually refusing her reasonable accommodation requests and by refusing to allow her registered ESA into the common areas.

8. Defendants' actions have prevented Ms. Kay from using and enjoying her home like other tenants.

9. Defendants' actions have caused actual damages and extreme mental anguish, as well as violating of her civil rights.

**COUNT V – Electronic Funds Transfer Act, Unauthorized Transfer – 15 U.S.C. §1693e and 12 C.F.R. 205.10(d)**

10. Ms. Kay re-alleges paragraphs 1-53 of this Complaint and incorporates them herein.

11. This claim is asserted under the Electronic Funds Transfer Act, which was established by Congress to define the rights and responsibilities of participants in electronic funds transfers. *See* 15 U.S.C. 1693 *et seq.*

12. Under 15 U.S.C. §1693e, payees are required to provide notice as prescribed by the Consumer Financial Protection Bureau ("CFPB") whenever a transfer will vary in amount from a previously authorized transfer.

13. The CFPB promulgated 12 C.F.R. §205 *et seq.* to enforce the EFTA. Under §205.10(d), it is unlawful for any person to initiate an electronic transfer of funds which differs from a pre-authorized amount, where there has not been at least 10 days' notice of the transfer.

14. Section 205.10(d) applies to any person, without limitation. *See* 12 C.F.R. §205.3(a).

15. Defendants' attempt to withdraw funds on or about June 2, 2023 was an electronic funds transfer within the meaning of the Act. *See* 12 C.F.R. §205.3(b).

16. Defendants' June 2 attempt to debit $5,273.85 from Ms. Kay's accounts, an amount far greater than what she had previously authorized and without the required 10 days' notice, constitutes a violation of §205.10 and of the EFTA.

17. Defendants' attempt to withdraw over $5,000 was intentional and demonstrated a reckless disregard for Ms. Kay's rights.

18. Ms. Kay suffered actual damages when she was forced to pay $30.00 to Chase Bank to prevent the overdraft that would have resulted from this debit.

**COUNT VI – Illinois Consumer Fraud Act, Unfair Practices - 815 ILCS §505/2**

19. Ms. Kay re-alleges paragraphs 1-53 of this Complaint and incorporates them herein.

20. This claim is asserted pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1 *et seq.* ("ICFA").

21. Ms. Kay is a "person" under §505/1(c) and a "consumer" under §505/1(e) of the Act.

22. At all times relevant to this proceeding, Defendants have been engaged in commerce and trade in Illinois.

23. To determine whether a business practice is unfair under the ICFA, the court must consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417-18. "All three criteria do not need to be satisfied to support a finding of unfairness."

24. "[A] plaintiff may prove an ICFA unfairness claim by showing that the challenged practice offends public policy. A practice can offend public policy if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Morg. Loan Trust, Series 2003-1*, 787 F.Supp.2d 747, 752 (N.D. Ill. 2011). (citations and quotation marks omitted).

25. Defendants' acts are unfair and a violation of established public policy because they violate the Federal Electronic Funds Transfer Act as detailed in Count IV above.

26. Defendants' unfair acts caused Ms. Kay actual damages by requiring her to pay $30.00 to Chase Bank in order to prevent an overdraft.

27. This risk to Ms. Kay's credit and to her future apartment rental prospects caused Ms. Kay substantial emotional distress, thereby exacerbating the emotional distress caused by Defendants' acts of discrimination detailed on Counts I through III.

28. Defendants' act of initiating a withdrawal of $5,273.85, an amount in excess of what Ms. Kay keeps in that account, showed reckless indifference to Ms. Kay's rights.

29. Defendants' actions in scheduling this transfer without the required notice to Ms. Kay were immoral, unethical, unscrupulous and oppressive.

30. Defendant violated the ICFA when it engaged in unfair conduct which violates public policy and caused Ms. Kay actual damages as well as substantial emotional distress.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare that Defendant's denial of Plaintiff's request for reasonable accommodation was a violation of the Fair Housing Amendments Act and of the Illinois Human Rights Act.

B. Declare that Defendant unlawfully intimidated and retaliated against Plaintiff in violation of the Fair Housing Act.

C. Declare that Defendant's attempt to withdraw fund from Plaintiff's bank account without permission was an unfair business practice in that it violates public policy and is immoral, unethical, oppressive, or unscrupulous and injurious to Plaintiff.

D. Award actual damages including emotional distress damages to Plaintiff in an amount to be determined at trial;

E. Award punitive damages to Plaintiff in an amount to be determined at trial;

F. Award statutory damages of $1,000 pursuant to 15 U.S.C. 1693(m);

G. Enjoin Defendants, their agents, employees and successors from discriminating on the basis of disability against Ms. Kay or any person in any aspect of their rental dwelling pursuant to its authority under the Illinois Human Rights Act and the Fair Hoing Amendments Act;

H. Order that Defendants cease their efforts to evict Ms. Kay and grant her request for a reasonable accommodation;

I. Order that Defendants undergo Fair Housing training;

J. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. §3613(c), 15 U.S.C. 1693m(a), 815 ILCS §505/10a(c) and 775 ILCS 5/10-102(B)(2); and

K. Grant such further relief as the Court deems just and proper in this matter.

Respectfully submitted,

/s/ Aaron J. Hanford
One of Plaintiff's Attorneys

Dated: August 22, 2023
Aaron Hanford, #6329778
Kathryn Liss  #6297046
Prairie State Legal Services
31W001 E. North Ave. Suite 200
West Chicago, IL 60185
(630) 690-2130
westsuburban@pslegal.org